*150
 
 CrASTON, Judge.
 

 After stating the case proceeded:
 

 The act in question is in these words. “ that ail contracts to sell or convey any lands, tenements or herc-
 
 “
 
 ditaments, or any interest in or concerning them, or
 
 “any
 
 slave or slaves, shall be void and of no effect, un-
 
 “
 
 less such contract, or some memorandum or note there-
 
 “
 
 of. shall be put in writing, and signed by the party to he
 
 “
 
 charged therewith, or some other person by him the
 
 re
 
 to lawfully authorised, except nevertheless contracts
 
 “
 
 for leases not exceeding in duration the term of three “ years.” The question whether this enactment applies to sales on execution, has we understand, occurred before on the circuit, and the decisions have been in conformity to that now under review. This however, is the first time in which this court has been called on to examine the question, and we have considered it with the attention due to its practical importance.
 

 It must then be admitted that the words used in the beginning of the act, are sufficiently comprehensive to embrace every contract, by whomsoever it may be made. But there are expressions in the act by no means appropriate to the case of a judicial sale, and tending to show that such sales were not within the contemplation of the Legislature at the time of making this enactment. To give validity to the contract it is required that the same, or some memorandum or note thereof, should be signed
 
 by the Qlirtij to be charged therewith,
 
 or by liis authorised ageit# Now in judicial sales who is the party to be charged as vendor ? Can the sheriff be regarded as such a party ? The sheriff is a public officer, acting in obedience to an execution commanding him, in tlie name of the State, to cause to be made of the property of a delinquent debtor, a sum of money judicially ascertained to t>e due to his creditor, A levy by the sheriff on the land of the debtor, divests neither the possession, nor the estate of the debtor. In making the sale the sheriff acts as
 
 a
 
 minister of the law, in obedience to its mandate, and in execution of the authority which that mandate confers upon him over the property of the debtor. The State — or the law — sells by its age'nt the sheriff. ' By a
 
 *151
 
 levy on slaves, he takes the possession, and acquires such an interest as will enable him to maintain an action of Trover, Detinue or Trespass against a wrong doer; but he takes this possession and special property as a bailee, in order to effect the requisitions of the law, and when he sells, the contract is not for the transfer of this special property, but for the transfer of the entire interest of the debtor, which the law orders to be converted, into money, for the satisfaction of the judgment creditor.—
 
 In all such
 
 sales therefore, the law is the vendor, and and so much of the enactment as requires that the contract shall be
 
 signed
 
 by the party to be charged therewith, cannot in such cases, apply to the vendor. Nór without violence to the ordinary import of language, can the law be spoken of as
 
 “ the party to he charged
 
 with the execution of a contract.”
 

 Upon a little reflection it cannot but be seen that great inconveniences must arise by regarding the sheriff, if he could be so regarded, as the party to be charged as the vendor. If it be so, then ho may
 
 lawfully
 
 refuse to execute a deed to the purchaser, after the sale and receipt of the purchase money, nay after its payment into court, and the actual satisfaction of the judgment, unless the purchaser can exhibit writen evidence of the contract signed by the sheriff, or by his lawfully authorised agent. And it is not easy to perceive how he can be made liable either civilly or criminally, for refusing to execute a contract which the law authorises him to treat as void and of no effect. It is highly improbable that the Legislature intended that the sheriff should have an arbitrary discretion to make a title, or not to make a title to the purchaser — and if he be
 
 the party to he charged
 
 he must have this discretion, because he is not
 
 hound
 
 to avail himself of this legal objection, but may like every party sought to be charged, waive it if he pleases. Should he refuse to make title, it is plain that vast confusion must arise, although it may be difficult to pronounce what will be the precise effects of this confusion on the plaintiff and the defendant in the execution, on the purchaser, or on the property. No apprehension of inconvenience- will
 
 *152
 
 prevent this court from giving full effect to every cott-stitutional expression of the legislative will, but the ar-gumont from inconvenience ought to have great* weight jn endeavoring to ascertain that will, when couched in general terms. Nor can I resist the conviction, that if the Legislature intended to vest the sheriff with so dangerous a power, it would have laid down some rule by which the consequences resulting from its exercise would be defined, instead of leaving them to bo inferred by judicial conjecture.
 

 These considerations lead me to the result that the sheriff cannot claim the protection of this act against a purchaser at an execution sale, paying the price of hiS purchase, and demanding a conveyance. He cannot, because such a sale is not within the meaning of the act. The converse of the proposition necessarily follows, neither can the purchaser set up this act, as a bar to the demand of the sheriff for the purchase money, the sheriff tendering a conveyance of the property. The object of the statute was to prevent frauds and perjuries, in cases where the value of the property might present strong temptations, and the variety and complexity of the contracts afford scope and facility for the commis-.gion of these crimes. Bargains
 
 between
 
 individuals, created solely by the convention of the parties, are susceptible of innumerable modifications, which may be indistinctly expressed, imperfectly understood, partially remembered, or wilfully misrepresented. The thing bought and sold, and its price, do not constitute all or the greater part, and frequently even not the most important part of such contracts. Is there to be any warranty of title, and if so to what extent ? Does the vendor stipulate as to the qualities of the thing conveyed ? Is he to deliver possession immediately, or at a future day, and then absolutely, or upon some condition ? Is the price to be paid down, or before a title is made ? If not to be paid down, when, and upon what instalments is it to be paid, and what security is to be given to ensure its payment ? All who are conversant with judicial proceedings know that questions like these, tq be decided on
 

 
 *153
 
 Several decisions made by courts of the highest respectability in the State of New-York have been referred to by the counsel for the defendant as showing that a similar enactment in their statute of frauds has been construed to apply to judicial sales. But on examining these cases, it will be found that they do not establish this position. The enactment in their statute which is held, and unquestionably, rightly held, to apply to judicial as well as individual sales, is not to the same purpose with ours, nor analagous to it, nor indeed upon the same subject matter. The provision in the Ne.w-York statute expounded in these cases declares
 
 “
 
 that no estates of freehold, or terms of years shall be granted but by deed or note in writing, or by act and operation of law,” and the courts have there holden that a purchaser of a freehold at a sheriff’s sale cannot maintain an ejectment until he obtains a deed. This enactment does not affect, or pretend to affect a
 
 contract for such a conveyance,
 
 but prescribes the necessary formalities to be observed in the execution of such a contract. The contract may be obligatory, and the parties bound to carry it into execution ; or responsible for the breach of it, although it want the forms which must be observed to make its execution effectual; but a deed or note in writing is an indispensable requisite to pass tile estate, and unless this be observed, the estate remains untransferred. Long before our act of 1819, the necessary formalities for the transfer of an estate in lands and in slaves, had been prescribed by our Legislature; and our courts, like those of New-York, have invariably held that these were indispensable to the passing of such estate, by whomsoever the transfer might be made, or attempted to be made. No estate in lands could be transferred by a sheriff without a deed acknowledged by the sheriff, or proved by á witness and registered in the county where the land lies, because our act of 1715 makes these ceremonies requisite to the passing of such an estate. No sale of slaves by a sheriff could pass the title, without either a bill of sale proved and registered in the proper county, or a delivery of the slave to the purchaser, because our acts of
 
 *154
 
 if84 and 1792 rendered such a bill of sale, or such a delivery, essential to a transfer of the title. Our act of 1819 operates upon the contract for a sale while it is executory, and no longer. It prescribes no ceremony in the execution of such a contract, and it has been judicially settled that it has no operation upon an executed contract. (See
 
 Choat v. Wright ante
 
 2
 
 vol. p.
 
 289.) It was enacted
 
 diverso intuitu.
 
 The only authorities which we have met with, bearing upon the construction of similar enactments to those in this statute, are in conformity to the exposition which we place upon it. In the case of the
 
 Attorney General
 
 v.
 
 Day,
 
 (1
 
 Ves. Sen.
 
 221,) Lord
 
 Hardwicke
 
 held, that judicial sales did not come within the purview of that section of the English statute of frauds, which declares that, no agreement for the purchase of lands shall be good unless signed by the party to be bound thereby or some person authorized by him; and the same decision was made by Chancellor
 
 Desse-saure,
 
 in South-Carolina, and affirmed an appeal in the Constitutional Court of that State, in the case of
 
 Jenkins
 
 v. Hogg. (2
 
 Con. Rep.
 
 821.)
 

 We concur therefore in so much of the instruction given by the Judge, as declares that the act of 1819, to make void parol contracts for the sale of lands and slaves, does not apply to purchasers at a sheriff’s sale under an execution, and this renders it unnecessary to examine the residue of the instruction.
 

 Per Curiam — Judgment aeeirmed.