IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1132

Filed: 7 July 2020

Cumberland County, No. 19 JA 187

IN RE: M.H.

Appeal by Respondent from orders entered 16 July 2019 and 9 September 2019

by Judge Tiffany M. Whitfield in Cumberland County District Court. Heard in the

Court of Appeals 10 June 2020.

> *Cumberland County Department of Social Services, by Michael A. Simmons, for the Petitioner.*
>
> *Leslie Rawls for the Respondent.*
>
> *Parker Poe Adams & Bernstein LLP, by Stacy S. Little, for the Guardian ad Litem.*

BROOK, Judge.

Olivia Howard ("Respondent") appeals from orders adjudicating her minor

child dependent. We reverse the trial court's adjudication of dependence.

I. Factual and Procedural Background

Near the end of March 2019, about a month before Madeline[1] was born,

Respondent contacted Laquanda Henry, her friend of over thirty years and the

daughter of her godparents, to inquire about an alternative child care arrangement

---

[1] We refer to the child by this pseudonym to protect her privacy.

for Madeline after she was born. Respondent reached out to Ms. Henry because Respondent and her husband had a history with the Cumberland County Department of Social Services ("the Department"). Two of Respondent's children were in the Department's custody at that time. Ms. Henry agreed to take care of Madeline "if anything happen[ed]" because of the Department's involvement with Respondent's family, volunteering to share her home with both Respondent and Madeline for "[a]s long as she needs to until she gets on her feet."

Madeline was born on 28 April 2019. Two days later, while she was still in the hospital, the Department received a Child Protective Services ("CPS") referral concerning her safety.

On 10 May 2019, the Department filed a petition alleging that Madeline was abused and neglected. Specifically, the Department alleged that Respondent had failed to correct the conditions that gave rise to the adjudications of neglect of Respondent's other children and that Respondent continued to lack employment and stable housing, having only lived at her current place of abode "for a brief period." Madeline's older siblings had been adjudicated neglected the previous November based on domestic violence and unstable housing in Respondent's household when she was still living with her husband. Although Respondent was no longer living with her husband in May of 2019, the Department sought custody of Madeline upon her release from the hospital. The trial court did not grant this request, however.

The Department's petition came on for adjudication before the Honorable Tiffany M. Whitfield in Cumberland County District Court on 16 July 2019. At the adjudication hearing, Respondent elected not to testify, but noted her objection to any suggestion that her living situation with Ms. Henry was unstable. Regarding the stability of Respondent's housing, Ms. Henry testified that Respondent and Madeline were "more than welcome" to live in her home in Fayetteville; that she had been living there for about three years; and that while Respondent was not on the lease, "If I have to put [Respondent] on my lease it wouldn't be a problem." "I think she would be more than welcome," Ms. Henry added.

In an order entered on 6 August 2019, the trial court dismissed the allegations of neglect but adjudicated Madeline dependent based on Respondent's lack of employment and stable housing. The court denied the Department's request for custody of Madeline, however, ordering that legal and physical custody of Madeline remain with Respondent until the disposition hearing.

The matter came on for disposition on 13 August 2019. Social Worker Anne Saleeby testified that Madeline had been doing very well since the adjudication hearing. Social Worker Saleeby testified further that Madeline had received all appropriate medical and other care since the adjudication hearing and that Respondent and Ms. Henry had all the necessary baby items for Madeline in the home, including adequate food and clothing. Ms. Saleeby reported that she had no

concerns about Respondent's interactions with Madeline, and denied that Respondent's housing was unstable, testifying that there had not been any indication that Respondent would not be able to continue living with Ms. Henry for an extended period of time. While noting that Respondent's lack of employment was a source of concern, Ms. Saleeby testified that Respondent's lack of income had not affected her ability to provide for Madeline because of assistance she had been receiving from family and friends.

Following the dispositional hearing, the trial court entered an order on 9 September 2019 maintaining physical and legal custody of Madeline with Respondent and determining that continuing to live with Respondent was in the best interests of Madeline. The trial court's dispositional order incorporated the prior adjudication of dependence of Madeline.

Respondent entered timely notice of appeal.

## II. Analysis

On appeal, Respondent contends that the trial court erred in adjudicating Madeline dependent because Respondent had adequate resources to care for Madeline and Madeline was flourishing in her mother's care. We hold that the trial court erred in adjudicating Madeline dependent.

### A. Overview

> The first stage [of a juvenile abuse, neglect, and dependency case] is the adjudicatory hearing. If [the

Department] presents clear and convincing evidence of the allegations in the petition, the trial court will adjudicate the child as an abused, neglected, or dependent juvenile. If the allegations in the petition are not proven, the trial court will dismiss the petition with prejudice and, if the juvenile is in [the Department's] custody, return[] the juvenile to the parents.

*In re A.K.*, 360 N.C. 449, 454-55, 628 S.E.2d 753, 757 (2006) (internal citations omitted).

Immediately following adjudication, the trial court must conduct a dispositional hearing. At the hearing, the trial court receives evidence and enters a written order specifying an appropriate plan to meet the needs of the juvenile. If the trial court finds it is in the juvenile's best interests, it may place the juvenile in out-of-home care. If custody of the child is removed from the parent, the trial court must hold a custody review hearing within ninety days and then again within six months.

*Id.* at 455, 628 S.E.2d at 757 (internal citations omitted).

B. Standard of Review

We review an adjudication under N.C. Gen. Stat. § 7B-807 to determine whether the trial court's findings of fact are supported by "clear and convincing competent evidence" and whether the court's findings support its conclusions of law. *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). The "clear and convincing" standard "is greater than the preponderance of the evidence standard required in most civil cases." *In re Smith*, 146 N.C. App. 302, 304, 552 S.E.2d 184, 186 (2001) (citation and marks omitted). Clear and convincing evidence is "evidence

which should fully convince." *Id.* (citation and marks omitted). Whether a child is dependent is a conclusion of law, *see In re V.B.*, 239 N.C. App. 340, 341, 768 S.E.2d 867, 868 (2015), and we review a trial court's conclusions of law de novo, *In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).

## C. Dependence

North Carolina General Statutes § 7B-101(9) defines a dependent juvenile in relevant part as "[a] juvenile in need of assistance or placement because . . . the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2019). "Under this definition, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court." *In re B.M.*, 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007). While "it has been consistently held that in order for a parent to have an appropriate alternative child care arrangement, the parent must have taken some action to identify viable alternatives[,]" *In re C.B.*, 245 N.C. App. 197, 211, 783 S.E.2d 206, 216 (2016) (internal marks and citation omitted), "[w]here . . . the . . . findings of fact indicate that the juveniles are living with a parent

who is willing and able to provide for their care and supervision, the juveniles simply cannot be adjudicated dependent[,]" *In re H.H.*, 237 N.C. App. 431, 439, 767 S.E.2d 347, 352 (2014).

### D. The Adjudicatory and Dispositional Orders

In the adjudicatory order dated 16 July 2019, the trial court found in relevant part as follows:

> 14. That the [Department], the Guardian ad Litem, and Respondent Mother made certain admissions of fact after having ample opportunity to consult with their respective counsel. That a written copy of those admissions was tendered to the Court. Respondent Father did not sign the stipulation; however, he agreed to the allegations as read into the record. Respondent Mother did not agree with the unstable housing allegation. That those admissions are as follows:
>
> > *a. The [Department] . . . received a Child Protective Services (CPS) referral on 04/30/2019 concerning the safety of the juvenile.*
> >
> > *. . .*
> >
> > *f. Respondent Mother is currently unemployed.*
> >
> > *g. **Amended:** Respondent Mother does not have stable housing. Respondent Mother is living with a friend; however, Respondent Mother is not a lawful occupant on the lease for the premise* [sic].
> >
> > *h. **Amended:** The child was born* [sic] *has been hospitalized since her birth with medical issues unrelated to Respondent Mother's pregnancy. The child will be released from the hospital on May 11, 2019.*

15. That the Court made the additional findings of fact by clear, cogent, and convincing evidence as it relates to the verified Petition filed on May 10, 2019 BASED ON sworn testimony provided before the Court on today's date and documentary evidence submitted to the Court on today's date:

> . . .
>
> *d. Respondent Mother does not have stable housing and was living with a friend. However, Respondent Mother was not lawfully on the premises as she is not listed on the occupant's lease.*
>
> *e. The child was born* [sic] *has been hospitalized since her birth with medical issues unrelated to Respondent Mother's pregnancy. Respondent Mother was acting accordingly with getting that medical treatment for the juvenile after her birth.*
>
> *f. Respondent Mother is unemployed. Respondent Father was also unemployed at the filing of the petition due to his incarceration.*

. . .

17. Based on the foregoing findings of fact, the Court finds that the competent evidence presented and admitted supports a finding that the juvenile was dependent, within the meaning of N.C. Gen. Stat. § 7B-101(9), in that at the time of the filing of the Petition, the juvenile's parent, guardian, or custodian is unable to provide for the care or supervision of the juvenile and lacks an appropriate alternative child care arrangement because at the time of the filing of the petition Respondent Parents did not have suitable and stable housing for the juvenile inasmuch as she was residing with a friend but is not lawfully on the lease. Respondent Father . . . was incarcerated at the time.

Therefore, the Court finds that the juvenile is a dependent juvenile.

(Emphasis in original.)

The trial court then in its 9 September 2019 dispositional order found in relevant part as follows:

> 3. That the Court entered an order on July 16, 2019 adjudicating the juvenile dependent. Said Order being filed on August 6, 2019. The Court incorporates the findings from that order as if fully set forth herein.
>
> . . .
>
> 6. That among the issues which led to the removal of the juvenile from the home were the following: Respondent Parents did not have suitable and stable housing for the juvenile inasmuch as she was residing with a friend but is not lawfully on the lease. Respondent Father . . . was incarcerated at the time.
>
> . . .
>
> 10. The juvenile was last seen by the Social Worker on August 5, 2019. The juvenile appeared to be physically fit and emotionally well.
>
> 11. The juvenile is three (3) months old. That the juvenile receives [her] routine medical care from KidzCare Pediatrics. The juvenile is up to date on all immunizations. There are no concerns for the juvenile at this time.
>
> . . .
>
> 16. The Court finds that Respondent Mother should obtain and maintain stable housing and employment.

17. Respondent Mother is not employed. Respondent Mother stays home to care for the juvenile. Respondent Mother is diligently searching for employment. Respondent Mother has re-engaged with therapy at KV Consultants. Respondent Mother maintains contact with the Department and makes herself available to the Department.

18. Respondent Mother provided sworn testimony on today's date. Based on her testimony, the Court finds the following: Respondent Mother had a job interview at Publix yesterday. She is making attempts to obtain employment.

19. Ms. Henry was present on today's date and provided sworn testimony. Based on her testimony, the Court finds the following: Respondent Mother resides in her home; however, Respondent Father does not reside in [] the home. Respondent Mother is actively searching for her own residence. The dog that was previously at issue has been given to a family member and is no longer in the home.

. . .

24. The Court finds that Respondent Parents and the juvenile are bonded. There are no safety concerns with the juvenile remaining with Respondent Parents.

. . .

26. Pursuant to N.C. Gen. Stat. § 7B-903, the Guardian ad Litem requested custody of the juvenile be granted to the Department due to safety concerns of the Respondent Mother's home. Said motion was denied. The Court finds that there is [sic] no immediate safety concerns for the minor child and the Respondent Mother continues to provide care for this minor child appropriately.

27. That the Court finds that legal and physical custody of the juvenile should remain with the Respondent Parents at

this time. The juvenile should remain placed in the home with Respondent Parents.

Although the court found that the Department "ha[d] made reasonable efforts to identify and notify relatives as potential resource [sic] for placement or support of the juvenile[,]" the court made no findings related to Ms. Henry's availability or suitability as an alternative child care arrangement.

## E. The Trial Court's Dependence Adjudication

As the trial court's findings demonstrate, the primary basis for the trial court's adjudication of Madeline as dependent was Respondent's lack of "suitable and stable housing[.]" Indeed, the court's repeated references to the stable housing issue in its findings demonstrate that Respondent's lack of employment was at most a secondary basis for the trial court's dependence adjudication. As noted previously, the court made no findings related to Ms. Henry's availability or suitability as an alternative child care arrangement despite Ms. Henry's testimony that Respondent had contacted her one month prior to Madeline's birth to ask Ms. Henry "if anything happens because of my other two kids will you be able to take my child[,]" and Ms. Henry "said yes."[2] The absence of findings related to the availability and suitability of alternative care arrangements for Madeline, such as with Ms. Henry, the

---

[2] By contacting Ms. Henry and moving into her home before Madeline was born, Respondent took the requisite action to identify a viable appropriate alternative child care arrangement for Madeline. *See, e.g.*, *In re L.H.*, 210 N.C. App. 355, 364, 708 S.E.2d 191, 197 (2011) ("parent must have taken some action to identify viable alternatives," such as by identifying a relative willing and able to care for the child, "in order for a parent to have an appropriate alternative child care arrangement").

alternative care arrangement sought out by Respondent before Madeline's birth, by itself requires that the trial court's adjudicatory and dispositional orders be reversed. *See In re B.M.*, 183 N.C. App. at 90, 643 S.E.2d at 648.

The question then becomes whether remand is necessary in this case, which turns on whether Respondent's housing situation, coupled with her lack of employment, rendered Respondent *unable* to provide for Madeline's care or supervision, thus meeting the first part of the two-part definition of dependence under N.C. Gen. Stat. § 7B-101(9). We hold that it did not. The trial court's findings of fact did not support the adjudication of neglect because there was no finding, nor was there the requisite "clear and convincing competent evidence," *In re Helms*, 127 N.C. App. at 511, 491 S.E.2d at 676, to support a finding that Respondent would not be able to continue living with Ms. Henry for an extended period of time. Merely because Respondent was not a party to or identified as an occupant in Ms. Henry's lease, the trial court inferred that Respondent's living situation was unstable, despite Mses. Henry and Saleeby's testimony to the contrary.[3] In the absence of any indication that Respondent was unlikely to be able to continue living with Ms. Henry for the foreseeable future, the trial court's conclusion that Madeline was dependent

---

[3] If, for example, evidence had been presented that the owner of Ms. Henry's home had refused to allow Respondent and Madeline to live in the home, or that the owner did not intend to agree to renew Ms. Henry's lease at some point in the near future, and findings to this effect were made by the trial court, the conclusion that Respondent was *unable* to provide for Madeline's care or supervision could have followed from the fact that Respondent was "residing with a friend but [was] not lawfully on the lease."

was not supported by the court's findings of fact related to her lack of employment and unstable housing because these findings did not establish that Respondent was "unable to provide for [] [Madeline's] care or supervision[.]" N.C. Gen. Stat. § 7B-101(9) (2019). "Thus, the trial court failed to find the ultimate facts essential to support its conclusions of law." *In re V.B.*, 239 N.C. App. at 343, 768 S.E.2d at 869 (internal marks and citation omitted). Because "all of the evidence and findings of fact indicate that the juvenile[] [is] living with a parent who is willing and able to provide for [her] care and supervision, the juvenile[] simply cannot be adjudicated dependent." *In re H.H.*, 237 N.C. App. at 439, 767 S.E.2d at 352 (emphasis in original omitted).

### III. Conclusion

We reverse the orders of the trial court because they did not include findings related to the availability and suitability of alternative care arrangements for the minor child and because the findings related to Respondent's unstable housing and lack of employment did not support the court's adjudication of dependence.

REVERSED.

Judges ZACHARY and BERGER concur.